**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 19-15177 |
| MARC GIBRICK, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | Hon. Judge Lashonda A. Hunt |
| ) | |
| ROBERT GOLDEN, ) | Room 719 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Pro. No. |
| ) | |
| MARC GIBRICK, ) | |
| ) | |
| Defendant. ) | |

**ADVERSARY COMPLAINT PURSUANT TO 11 U.S.C § 727(A)(4)(C) IN
OBJECTION TO DISCHARGE OF DEBT AND FOR OTHER RELIEF**

NOW COMES Plaintiff/Creditor ROBERT GOLDEN ("Golden"), by and through his attorney, The Law Offices of Brendan R. Appel, LLC, and pursuant to Federal Rule of Bankruptcy Procedure 7001, complains against Defendant/Debtor MARC GIBRICK ("Gibrick"), an Individual and Debtor in Case No. 19-15177, as follows:

**Introduction**

1.  Plaintiff brings this adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure to object to the proposed discharge of debt incurred by Defendant Gibrick which remains pending in the Circuit Court of Cook County in Case No. 2018 M2 004718.

**Jurisdiction & Venue**

2.  This Court has jurisdiction over this adversary proceeding pursuant to 28 USC § 157 and 1334.

1

3. This is a core proceeding pursuant to 28 USC § 157(b)(2).

4. Venue is proper in this District pursuant to 28 USC § 1409(a).

5. Plaintiff consents to entry of final orders or judgments by the bankruptcy court pursuant to Rule 7008.

## The Parties

6. Plaintiff Golden is an Individual with a principal place of residence in Glenview, Illinois (the "Property").

7. Defendant Gibrick is an Individual whose place of residence is, on information and belief, in Buffalo Grove, Illinois. Gibrick was the sole corporate officer of Marc's Window Treatments, with a registered business address at 293 Willow Parkway, Buffalo Grove, IL 60089. On information and belief, Marc's Window Treatments was involuntarily dissolved by the Illinois Secretary of State on or about May 13, 2016.

8. Lanny Gibrick, the Defendant's brother, is an Individual whose place of residence is 501 Thorndale Drive in Buffalo Grove, Illinois. Lanny was the sole corporate officer of Alan's Draperies, Inc. ("Alan's Draperies"), with a registered business address at 1912 Raymond Drive in Northbrook, Illinois. On information and belief, Alan's Draperies was involuntarily dissolved by the Illinois Secretary of State on or about October 31, 2013.

## Background

9. This matter stems from a contract between Plaintiff Golden and Lanny dated on or about March 18, 2014 ("Agreement"), whereby Lanny was to provide and install various window treatments including sheers, blinds and drapes – which he failed to do.

10. On or about September 8, 2014, Golden filed a three-count lawsuit against Lanny in the Circuit Court of Cook County, Case No. 2014 M2 001791. The lawsuit was supported by a

Verified Complaint which set forth claims for Breach of Contract, violations of the Illinois Consumer Fraud & Deceptive Business Practices Act (the "Act"), and Common Law Fraud.

11. On November 12, 2014, Gibrick failed to appear. The Circuit Court entered a default judgment in Golden's favor, and continued the case to December 16, 2014 for prove-up on Golden's damages.

12. On December 16, 2014, the Circuit Court entered a judgment in Golden's favor for $16,374.23, itemized as $8,000.00 in compensatory damages, $5,000.00 in punitive damages for fraud, and $3,374.23 in attorney's fees and costs pursuant to the Act (the "Judgment"). A copy of the default judgment order is attached hereto as **Exhibit A**.

13. After obtaining the Judgment, Plaintiff began efforts to discover assets of both Lanny and Alan's Draperies to collect on the Judgment in a supplemental proceeding within Case No. 2014 M2 001791, at which time a 2007 Chevrolet Express G2500 van, Vehicle Identification No. 1GCGG25V171154876, registered to Alan's Draperies (the "Vehicle") was discovered.

14. Plaintiff issued a Citation to Discover Assets to Lanny and conducted a Citation Examination on or about June 11, 2015. The Citation directed Lanny to bring all documents related to the Vehicle.

15. Lanny appeared in Court on June 11, 2015 with no documents. Lanny stated that they were "buried in his house under the mess." The Citation to Discover Assets was continued to July 2, 2018 for Lanny to return to Court with the requested documents, but Lanny was placed under oath to allow Plaintiff to question him under oath about the Vehicle and other assets.

16. Lanny swore under oath that he had "sold" the Vehicle to his brother, the Defendant. Lanny then testified that he didn't remember exactly when he had sold the Vehicle to

his brother but recalled that it was sometime around the start of 2015. Lanny stated that he had gone to Bill Stasek Chevrolet and "signed some documents" relating to the sale, but he testified that he didn't recall what he had signed.

17. Lanny further testified that he was insolvent and could not pay his debts.

18. After hearing Lanny's testimony, Plaintiff issued subpoenas to the Defendant and Bill Stasek Chevrolet seeking documents relating to the Vehicle as well as both Lanny and the Defendant. Both subpoenas were returnable by June 30, 2015. The Defendant tendered an incomplete response to Plaintiff's subpoena on or about July 9, 2015.

19. Bill Stasek Chevrolet responded to Plaintiff's subpoena and produced numerous documents related to the Vehicle. The produced documents revealed that Lanny signed the Vehicle over to Marc's Windows, and that Marc (in his individual capacity and as president of Marc's Windows) then used the Vehicle as a trade-in towards the purchase of a new van.

20. On or about November 29, 2014, both Lanny and the Defendant (in his individual capacity and as president of Marc's Windows) executed powers of attorney permitting Bill Stasek Chevrolet to sign certain transfer documents relating to the Vehicle. A copy of these powers of attorney are attached hereto as **Exhibit B** (Lanny's power of attorney) and **Exhibit C** (Marc's power of attorney).

21. On or about November 29, 2014, Lanny executed a letter on Alan's Draperies letterhead stating: "Alan's Draperies releases all interest in (the Vehicle) to Marc's Window Treatments." A copy of this letter is attached as **Exhibit D**.

22. The Defendant (in his individual capacity and as president of Marc's Windows) signed an Odometer Disclosure Statement naming both himself and Marc's Windows as transferors of the Vehicle. A copy of the Statement is attached hereto as **Exhibit E**.

23. The Defendant (in his individual capacity and as president of Marc's Windows) then used the Vehicle as a trade-in towards to the purchase of a 2014 Chevrolet van. The Defendant received $6,500.00 in trade-in value for the Vehicle. A copy of the receipt for the transaction documenting the use of the Vehicle as a trade-in is attached hereto as **Exhibit F**.

24. Using Lanny's power of attorney, Bill Stasek Chevrolet transferred title of the Vehicle to itself pursuant to its trade-in agreement with the Defendant and Marc's Windows. A copy of the Certificate of Title is attached hereto as **Exhibit G**.

25. In connection with the transaction, the Defendant executed a Customer Trade-In Evaluation Form acknowledging the trade-in arrangement and stating that the purpose of the trade-in was to "get a newer van." A copy of this form is attached hereto as **Exhibit H**.

26. None of the documents produced by Bill Stasek Chevrolet showed Lanny receiving any value from the Defendant or Marc's Windows in exchange for disclaiming all interest in the Vehicle and permitting the Defendant and Marc's Windows to use the vehicle as a trade-in. The documents appear to show that Lanny simply gave the Vehicle to his brother despite Lanny's alleged insolvency.

27. Bill Stasek Chevrolet ultimately sold the Vehicle to a subsequent purchaser for $10,998.00. A copy of the receipt documenting this transaction is attached hereto as **Exhibit I**.

28. Lanny returned to Court on July 2, 2015 and submitted to a second Citation examination. Lanny was again placed under oath.

29. When asked what value he had received for the "sale" of the Vehicle which he had testified about during the First Citation Examination, Lanny changed his testimony. Lanny admitted that he did not receive any value for the Vehicle from the Defendant or Marc's Window Treatments, and that he instead "gave it" to Marc. Lanny further testified that he knew that the

Vehicle was owned by Alan's Draperies at the time he gave the Vehicle to the Defendant. When asked why he would give something of value away when he was insolvent, Lanny testified that he "didn't think about it."

30. Lanny further testified that he gave the Vehicle to the Defendant because Marc had sometimes driven the Vehicle.

31. On July 10, 2015, Lanny filed for Bankruptcy in Case No. 15-23651 in part to attempt to discharge Golden's default judgment against him.

32. In January 2016, Golden filed an adversary complaint against Lanny in Case No. 16 A 14.

33. On February 16, 2018, the Honorable Judge A. Benjamin Goldgar granted Golden's Motion to Compel and for Sanctions, which included a default judgment against Lanny declaring that his debt to Golden is nondischargable. A copy of the Order dated February 16, 2018 is attached hereto as **Exhibit J**.

34. On October 31, 2018, Golden filed a lawsuit against the Defendant in the Circuit Court of Cook County, Case No. 2018 M2 4718. The Verified Complaint set forth a claim of fraudulent transfer under the Illinois Uniform Fraudulent Transfer Act ("UFTA"). A copy of the Verified Complaint is attached hereto as **Exhibit K**.

35. On November 13, 2018, the agent for Marc's Window Treatments was served by the Cook County Sheriff.

36. On January 15, 2019, the Defendant was served by a special process server.

37. On April 2, 2019, a Default Order was entered against Marc's Window Treatments and a prove-up date was set for May 9, 2019, along with trial against the Defendant.

38. On May 9, 2019, the prove-up and trial were continued to May 30, 2019.

6

39. On May 28, 2019, the Defendant filed his Voluntary Petition for Chapter 7 Bankruptcy in Case No. 19-15177, and he named the Plaintiff as a Creditor in No. 4.17 of Schedule E/F.

40. On May 30, 2019, the proceedings in Cook County were stayed against the Defendant while a Default Judgment was entered against Marc's Window Treatments. A copy of the Order dated May 30, 2019 is attached hereto as **Exhibit L**.

41. Plaintiff has been unable to collect any substantial part of the judgment from Lanny despite persistent efforts to do so, and $19,597.13 remains outstanding as of August 1, 2019.

**COUNT I**
**Objection to Discharge From an Individual Debt Pursuant to 11 USC § 548(b)(1)**

42. Plaintiff restates and re-alleges the allegations of Paragraphs 1-40 as though fully set forth herein.

43. 11 USC § 548(b)(1) provides that a trustee may

> avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; or . . . (IV) made such transfer to or for the benefit of an insider . . .

44. The transfer, though occurring more than 2 years before the filing of the petition in this matter, is exempted by 11 USC § 548(c), which invokes 11 USC § 544(b)(1) by providing that the trustee "may avoid any transfer of an interest of the debtor in property or any obligation

incurred by the debtor that is voidable under *applicable law* by a creditor holding an unsecured claim that is allowable under section 502 of this title." (Emphasis added.)

45. UFTA (740 ILCS 160), which is modeled on 11 USC § 548, allows a claim to be brought within 4 years after the transfer was made or the obligation was incurred, and therefore is recognized as "applicable law" by 11 USC § 544(b)(1).

46. 11 USC § 502(a), additionally, provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed."

47. On September 5, 2019, Plaintiff filed a claim pursuant to 11 USC § 501. A copy of the Claim is attached hereto as **Exhibit M**.

48. Pursuant to UFTA, a "claim" means a right to payment, whether or not the right is reduced to judgment, disputed or undisputed, secured or unsecured. 740 ILCS 160/2(c).

49. Pursuant to UFTA, a "creditor" means a person who has a claim. 740 ILCS 160/2(d).

50. Pursuant to UFTA, a "debtor" means a person who is liable on a claim. 740 ILCS 160/2(f).

51. Plaintiff is a "creditor" with a valid "claim" against Lanny within the meaning of UFTA.

52. Lanny is a "debtor" with liability on Plaintiff's claim within the meaning of the UFTA. 740 ILCS 160/2(f).

53. Pursuant to UFTA, an "insider" is a relative of an individual debtor. 740 ILCS 160/2(g)(1)(A).

54. Both the Defendant and Marc's Windows are "insiders" within the meaning of the UFTA.

8

55. Pursuant to UFTA, an "asset" means property of a debtor. 740 ILCS 160/2(b).

56. The Vehicle is an "asset" of Lanny's within the meaning of the UFTA.

57. Pursuant to UFTA, a "transfer" means every mode of disposing or parting with an asset. 740 ILCS 160/2(l).

58. Lanny's release of all interest in the Vehicle to Marc and Marc's Windows was a "transfer" within the meaning of the UFTA.

59. A debtor who is generally not paying his debts as they become due is presumed to be insolvent. 740 ILCS 160/3(b).

60. At the time of the transfer and at all times relevant, Lanny was "insolvent" within the meaning of UFTA since he testified to his insolvency at both the First Citation Examination and the Second Citation Examination and stated that he was unable to pay his debts. He later declared bankruptcy, but Plaintiff's claim was adjudged nondischargeable.

61. Plaintiff's claim against Lanny arose before he transferred the Vehicle to the Defendant and Marc's Windows on or about November 29, 2014. Lanny was served with a copy of Plaintiff's Summons and Complaint on or about September 30, 2014, a full two months before the transfer of the Vehicle.

62. Lanny did not receive a reasonably equivalent value from the Defendant or Marc's Windows in exchange for the transfer of the Vehicle. Lanny's own testimony and the documents produced by Bill Stasek Chevrolet indicate that Lanny simply gave the vehicle to the Defendant and Marc's Window Treatments.

63. A transfer of an asset by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor did not receive a reasonably equivalent value in

exchange for the transfer and the debtor was insolvent at the time of the transfer. 740 ILCS 160/6(a).

64. A creditor may bring an action for avoidance of a fraudulent transfer to the extent necessary to satisfy the creditor's claim under the Act. 740 ILCS 160/8(a)(1).

65. The creditor may recover a judgment for the value of the asset transferred against the party to whom the asset was fraudulently transferred. 740 ILCS 160/9(b)(1).

66. This transfer was a fraud against Plaintiff since Lanny did not receive reasonably equivalent value for the transfer of the Vehicle, but the Defendant and Marc's Windows benefited from the transfer through their use of the Vehicle as a trade-in towards the purchase of a new vehicle.

67. Further, the transfer represents a considerable waste. Lanny did not receive value for a substantial asset which could have been used to satisfy Plaintiff's claim. As Bill Stasek Chevrolet's subsequent transfer revealed, the market value of the asset was almost $11,000.00.

68. $9,999.99 represents a reasonable value of the Vehicle at the time of transfer.

69. This Honorable Court should void the transfer, declare the full amount sought as nondischargeable pursuant to 11 USC § 548(b)(1), and enter judgment in Plaintiff's favor for $9,999.99 against the Defendant as the first transferees of the Vehicle.

WHEREFORE, Plaintiff-Creditor ROBERT GOLDEN asks this Honorable Court to enter a judgment of nondischargeability under 11 U.S.C. § 523(a)(2) in his favor, and against Defendant-Debtor MARC GIBRICK in the amount of $9,999.99, grant attorney's fees to Plaintiff-Creditor pursuant to the Illinois Deceptive Business Practices Act, and for such further relief as this Court deems just and necessary.

**Dated:** **September 6, 2019**   Respectfully submitted,

_____
The Law Offices of Brendan R. Appel, LLC
Attorney for Plaintiff-Creditor

The Law Offices of Brendan R. Appel, LLC
Brendan R. Appel
191 Waukegan Road, Suite 360
Northfield, Illinois 60062
(847) 730-4224
(847) 730-4114 (facsimile)
IL ARDC: 6271877