## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| In Re: MARC GIBRICK | ) | Bankruptcy Case No. 19-15177 |
| | ) | |
| _____ | ) | |
| | ) | |
| ROBERT GOLDEN, | ) | Chapter 7 |
|        Plaintiff, | ) | |
|    vs. | ) | Adversary No: 19-AP-926 |
| | ) | |
| MARC GIBRICK, | ) | |
|        Defendant. | ) | Judge Hunt |

## NOTICE OF ANSWER
## IN ADVERSARY PROCEEDING

**The following party(s) have been served via CM/ECF:**
Brendan Appel, attorney for Robert Golden

**The following party(s) have been served via first-class U.S. mail:**
Marc Gibrick, P.O. Box 7811, Buffalo Grove, IL 60089
Brendan Appel, Law Offices of Brendan R. Appel, LLC, 191 Waukegan Road, Suite 360, Northfield, IL 60093

## PROOF OF SERVICE

The undersigned certifies that copies of this Notice and attachments were served to the listed persons or entities, if service by mail was indicated above, by depositing same in the U.S. Mail at Wheeling, Illinois 60090, on or before December 13, 2019, at 5:30 p.m., with proper postage prepaid, unless a copy was provided electronically by the Bankruptcy Court.

DATE OF SERVICE: <u>December 13, 2019</u>      <u>/s/ Robert C. Bansfield Jr.   </u>
                                                Robert C. Bansfield Jr., A.R.D.C. #6329415

Attorney for the Debtor(s)
DAVID M. SIEGEL & ASSOCIATES
790 Chaddick Drive
Wheeling, IL 60090
(847) 520-8100

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| In Re: MARC GIBRICK | ) | Bankruptcy Case No. 19-15177 |
| | ) | |
| _____ | ) | |
| | ) | |
| ROBERT GOLDEN, | ) | Chapter 7 |
|               Plaintiff, | ) | |
|    vs. | ) | Adversary No: 19-AP-926 |
| | ) | |
| MARC GIBRICK, | ) | |
|               Defendant. | ) | Judge Hunt |

## **ANSWER IN ADVERSARY PROCEEDING**

Now Comes MARC GIBRICK, by and through his attorneys, David M. Siegel and

Associates, to respond to Robert Golden's Complaint, and states as follows:

### **Introduction**

1. *Plaintiff brings this adversary proceeding: 1) as an action originally brought in state court*

   *unrelated to the bankruptcy case; 2) in the alternative, pursuant to Rule 7001(6) of the*

   *Federal Rules of Bankruptcy Procedure; and/or 3) in the alternative, pursuant to Rule*

   *7001(1) of the Federal Rules of Bankruptcy Procedure to object to the proposed discharge of*

   *debt incurred by Defendant Marc Gibrick which remains pending in the Circuit Court of*

   *Cook County in Case No. 2018 M2 004718.*

**Defendant admits that this adversary proceeding is brought under the above mentioned**

**statute and rules but denies that this is a proper complaint to be brought under applicable**

**Bankruptcy Code. Defendant admits that there is a pending action in the Circuit Court of**

**Cook County in Case No. 2018 M2 004718.**

## Jurisdiction & Venue

2. *This Court has jurisdiction over this adversary proceeding pursuant to 28 USC § 157 and 1334.*

**Admitted.**

3. *This is a core proceeding pursuant to 28 USC § 157(b)(2).*

**Admitted.**

4. *This case relates to the Chapter 7 matter In Re: Marc Gibrick, Case No. 19-15177.*

**Admitted.**

5. *Venue is proper in this District pursuant to 28 USC § 1409(a).*

**Admitted.**

6. *Plaintiff consents to entry of final orders or judgments by the bankruptcy court pursuant to Rule 7008.*

**Paragraph 6 contains a statement that Defendant is not required to admit or deny.**

## The Parties

7. *Plaintiff/Creditor Golden is an Individual with a principal place of residence in Glenview, Illinois.*

**Admitted.**

8. *Defendant Gibrick is an Individual whose place of residence is, on information and belief, in Buffalo Grove, Illinois. Gibrick was the sole corporate officer of Marc's Window Treatments, with a registered business address at 293 Willow Parkway, Buffalo Grove, IL 60089. On information and belief, Marc's Window Treatments was involuntarily dissolved by the Illinois Secretary of State on or about May 13, 2016.*

**All allegations admitted.**

9. *Lanny Gibrick, the Defendant's brother, is an Individual whose place of residence is 501 Thorndale Drive in Buffalo Grove, Illinois. Lanny was the sole corporate officer of Alan's Draperies, Inc. ("Alan's Draperies"), with a registered business address at 1912 Raymond Drive in Northbrook, Illinois. On information and belief, Alan's Draperies was involuntarily dissolved by the Illinois Secretary of State on or about October 31, 2013.*

**All allegations admitted.**

## Background

10. *This matter stems from a contract between Plaintiff Golden and Lanny dated on or about March 18, 2014 ("Agreement"), whereby Lanny was to provide and install various window treatments including sheers, blinds and drapes – which he failed to do.*

**Without knowledge, therefore denied.**

11. *On or about September 8, 2014, Golden filed a three-count lawsuit against Lanny in the Circuit Court of Cook County, Case No. 2014 M2 001791. The lawsuit was supported by a Verified Complaint which set forth claims for Breach of Contract, violations of the Illinois Consumer Fraud & Deceptive Business Practices Act (the "Act"), and Common Law Fraud.*

**Admitted.**

12. *On November 12, 2014, Gibrick failed to appear. The Circuit Court entered a default judgment in Golden's favor, and continued the case to December 16, 2014 for prove-up on Golden's damages.*

**Without knowledge, therefore denied.**

13. On December 16, 2014, the Circuit Court entered a judgment in Golden's favor for $16,374.23, itemized as $8,000.00 in compensatory damages, $5,000.00 in punitive damages for fraud, and $3,374.23 in attorney's fees and costs pursuant to the Act (the "Judgment"). A copy of the default judgment order is attached hereto as __*Exhibit A*__.

**Admitted.**

14. After obtaining the Judgment, Plaintiff began efforts to discover assets of both Lanny and Alan's Draperies to collect on the Judgment in a supplemental proceeding within Case No. 2014 M2 001791, at which time a 2007 Chevrolet Express G2500 van, Vehicle Identification No. 1GCGG25V171154876, registered to Alan's Draperies (the "Vehicle") was discovered.

**Without knowledge, therefore denied.**

15. Plaintiff issued a Citation to Discover Assets to Lanny and conducted a Citation Examination on or about June 11, 2015. The Citation directed Lanny to bring all documents related to the Vehicle.

**Without knowledge, therefore denied.**

16. Lanny appeared in Court on June 11, 2015 with no documents. Lanny stated that they were "buried in his house under the mess." The Citation to Discover Assets was continued to July 2, 2018 for Lanny to return to Court with the requested documents, but Lanny was placed under oath to allow Plaintiff to question him under oath about the Vehicle and other assets.

**Without knowledge, therefore denied.**

17. Lanny swore under oath that he had "sold" the Vehicle to his brother, the Defendant. Lanny then testified that he didn't remember exactly when he had sold the Vehicle to his brother but recalled that it was sometime around the start of 2015. Lanny stated that he had gone to Bill

*Stasek Chevrolet and "signed some documents" relating to the sale, but he testified that he didn't recall what he had signed.*

**Defendant is without knowledge as to what Lanny testified to and stated to, therefore denied.**

*18. Lanny further testified that he was insolvent and could not pay his debts.*

**Without knowledge, therefore denied.**

*19. After hearing Lanny's testimony, Plaintiff issued subpoenas to the Defendant and Bill Stasek Chevrolet seeking documents relating to the Vehicle as well as both Lanny and the Defendant. Both subpoenas were returnable by June 30, 2015. The Defendant tendered an incomplete response to Plaintiff's subpoena on or about July 9, 2015.*

**Admitted.**

*20. Bill Stasek Chevrolet responded to Plaintiff's subpoena and produced numerous documents related to the Vehicle. The produced documents revealed that Lanny signed the Vehicle over to Marc's Windows, and that Marc (in his individual capacity and as president of Marc's Windows) then used the Vehicle as a trade-in towards the purchase of a new van.*

**Defendant admits that in his capacity as president of Marc's Windows, he traded in the Vehicle but denies he traded the Vehicle in his individual capacity. Other allegations are admitted.**

*21. On or about November 29, 2014, both Lanny and the Defendant (in his individual capacity and as president of Marc's Windows) executed powers of attorney permitting Bill Stasek Chevrolet to sign certain transfer documents relating to the Vehicle. A copy of these powers of attorney are attached hereto as **Exhibit B** (Lanny's power of attorney) and **Exhibit C** (Marc's power of attorney).*

Defendant admits that he signed and executed a power of attorney in his capacity as president of Marc's Windows but denies he signed it in his individual capacity. Other allegations are admitted.

22. *On or about November 29, 2014, Lanny executed a letter on Alan's Draperies letterhead stating: "Alan's Draperies releases all interest in (the Vehicle) to Marc's Window Treatments." A copy of this letter is attached as **Exhibit D**.*

Defendant admits the letter was executed on Alan's Draperies letterhead stating: "Alan's Draperies releases all interest in (the Vehicle) to Marc's Window Treatments." Defendant lacks sufficient knowledge for the date it was executed, therefore denies.

23. *The Defendant (in his individual capacity and as president of Marc's Windows) signed an Odometer Disclosure Statement naming both himself and Marc's Windows as transferors of the Vehicle. A copy of the Statement is attached hereto as **Exhibit E**.*

Defendant admits that he signed an Odometer Disclosure Statement in his capacity as president of Marc's Windows but denies he signed it in his individual capacity.

24. *The Defendant (in his individual capacity and as president of Marc's Windows) then used the Vehicle as a trade-in towards to the purchase of a 2014 Chevrolet van. The Defendant received $6,500.00 in trade-in value for the Vehicle. A copy of the receipt for the transaction documenting the use of the Vehicle as a trade-in is attached hereto as **Exhibit F**.*

Defendant admits he used the Vehicle as a trade-in towards the purchase of a 2014 Chevrolet van in his capacity as president of Marc's Windows but denies that he did so in his individual capacity. Defendant admits the $6,500.00 trade-in value for the Vehicle.

*25. Using Lanny's power of attorney, Bill Stasek Chevrolet transferred title of the Vehicle to itself pursuant to its trade-in agreement with the Defendant and Marc's Windows. A copy of the Certificate of Title is attached hereto as **Exhibit G**.*

**Admitted.**

*26. In connection with the transaction, the Defendant executed a Customer Trade-In Evaluation Form acknowledging the trade-in arrangement and stating that the purpose of the trade-in was to "get a newer van." A copy of this form is attached hereto as **Exhibit H**.*

**Admitted.**

*27. None of the documents produced by Bill Stasek Chevrolet showed Lanny receiving any value from the Defendant or Marc's Windows in exchange for disclaiming all interest in the Vehicle and permitting the Defendant and Marc's Windows to use the vehicle as a trade-in. The documents appear to show that Lanny simply gave the Vehicle to his brother despite Lanny's alleged insolvency.*

**Defendant admits that none of the documents produced by Bill Stasek Chevrolet showed Lanny receiving any value from Marc's Windows in exchange for disclaiming all interest in the Vehicle and permitting Defendant as president for Marc's Windows to use the vehicle as a trade-in. However, Defendant denies that Lanny simply gave the Vehicle to him because, Marc's Windows agreed to trade the Vehicle to Alan's Draperies in exchange for Marc's Windows giving Alan's Draperies a 2007 Chevrolet Trailblazer SS, VIN #1GNET13H072251918. See Defendant Exhibit 1.**

*28. Bill Stasek Chevrolet ultimately sold the Vehicle to a subsequent purchaser for $10,998.00. A copy of the receipt documenting this transaction is attached hereto as **Exhibit I**.*

**Admitted.**

29. *Lanny returned to Court on July 2, 2015 and submitted to a second Citation examination. Lanny was again placed under oath.*

**Without knowledge, therefore denied.**

30. *When asked what value he had received for the "sale" of the Vehicle which he had testified about during the First Citation Examination, Lanny changed his testimony. Lanny admitted that he did not receive any value for the Vehicle from the Defendant or Marc's Window Treatments, and that he instead "gave it" to Marc. Lanny further testified that he knew that the Vehicle was owned by Alan's Draperies at the time he gave the Vehicle to the Defendant. When asked why he would give something of value away when he was insolvent, Lanny testified that he "didn't think about it."*

**Defendant is without knowledge as to what Lanny testified to at the second Citation examination, therefore denies what was stated and testified to. Defendant denies that Lanny did not receive any value for the Vehicle from Defendant or Marc's Windows or that Lanny "gave it" to Defendant because, in fact, Lanny and Alan's Draperies agreed to trade the Vehicle for a 2007 Chevrolet Trailblazer SS, VIN #1GNET13H072251918. See <u>Defendant Exhibit 1</u>.**

31. *Lanny further testified that he gave the Vehicle to the Defendant because Marc had sometimes driven the Vehicle.*

**Without knowledge, therefore denied.**

32. *On July 10, 2015, Lanny filed for Bankruptcy in Case No. 15-23651 in part to attempt to discharge Golden's default judgment against him.*

**Defendant admits Lanny filed for Bankruptcy but is without knowledge as to why, therefore denied.**

*33. In January 2016, Golden filed an adversary complaint against Lanny in Case No. 16 A 14.*

**Admitted.**

*34. On February 16, 2018, the Honorable Judge A. Benjamin Goldgar granted Golden's Motion to Compel and for Sanctions, which included a default judgment against Lanny declaring that his debt to Golden is nondischargeable. A copy of the Order dated February 16, 2018 is attached hereto as **Exhibit J**.*

**Admitted.**

*35. On October 31, 2018, Golden filed a lawsuit against the Defendant in the Circuit Court of Cook County, Case No. 2018 M2 4718. The Verified Complaint set forth a claim of fraudulent transfer under the Illinois Uniform Fraudulent Transfer Act ("UFTA") (740 ILCS 160). A copy of the Verified Complaint is attached hereto as **Exhibit K**.*

**Admitted.**

*36. On November 13, 2018, the agent for Marc's Window Treatments was served by the Cook County Sheriff.*

**Admitted.**

*37. On January 15, 2019, the Defendant was served by a special process server.*

**Admitted.**

*38. On April 2, 2019, a Default Order was entered against Marc's Window Treatments and a prove-up date was set for May 9, 2019, along with trial against the Defendant.*

**Admitted.**

*39. On May 9, 2019, the prove-up and trial were continued to May 30, 2019.*

**Admitted.**

*40. On May 28, 2019, the Defendant filed his Voluntary Petition for Chapter 7 Bankruptcy in*

    *Case No. 19-15177, and he named the Plaintiff as a Creditor in No. 4.17 of Schedule E/F.*

**Admitted.**

*41. On May 30, 2019, the proceedings in Cook County were stayed against the Defendant while*

    *a Default Judgment was entered against Marc's Window Treatments. A copy of the Order*

    *dated May 30, 2019 is attached hereto as **Exhibit L**.*

**Admitted.**

*42. Plaintiff has been unable to collect any substantial part of the judgment from Lanny despite*

    *persistent efforts to do so, and $19,597.13 remains outstanding as of August 1, 2019.*

**Without knowledge, therefore denied.**


**COUNT I**
**Objection to Discharge From an Individual Debt Pursuant to 740 ILCS 160**


*43. Plaintiff restates and re-alleges the allegations of Paragraphs 1-40 as though fully set forth*

    *herein.*

**The responses to paragraphs 1 through 40 are repeated and incorporated in response to this paragraph.**

*44. UFTA allows a claim to be brought within 4 years after the transfer was made or the*

    *obligation was incurred, and therefore is recognized as an other action that was brought in*

    *state court and was unrelated to the bankruptcy case.*

**Defendant admits that the UFTA allows a plaintiff to bring a cause of action in state court, however, Defendant denies that the UFTA allows a plaintiff to bring an action in Bankruptcy Court. Defendant admits that an action under UFTA is unrelated to the bankruptcy case.**

*45. On September 5, 2019, Plaintiff filed a claim pursuant to 11 USC § 501. A copy of the Claim is attached hereto as __Exhibit M__.*

**Admitted.**

*46. Pursuant to UFTA, a "claim" means a right to payment, whether or not the right is reduced to judgment, disputed or undisputed, secured or unsecured. 740 ILCS 160/2(c).*

**Admitted.**

*47. Pursuant to UFTA, a "creditor" means a person who has a claim. 740 ILCS 160/2(d).*

**Admitted.**

*48. Pursuant to UFTA, a "debtor" means a person who is liable on a claim. 740 ILCS 160/2(f).*

**Admitted.**

*49. Plaintiff is a "creditor" with a valid "claim" against Lanny within the meaning of UFTA.*

**Paragraph 49 is a legal conclusion, not a factual allegation and therefore it is denied.**

*50. Lanny is a "debtor" (and transferor) with liability on Plaintiff's claim within the meaning of the UFTA. 740 ILCS 160/2(f).*

**Paragraph 50 is a legal conclusion, not a factual allegation and therefore it is denied.**

*51. Pursuant to UFTA, an "insider" is a relative of an individual debtor. 740 ILCS 160/2(g)(1)(A).*

**Admitted.**

*52. Both the Defendant and Marc's Windows are "insiders" and "transferee" within the meaning of the UFTA.*

**Paragraph 52 is a legal conclusion, not a factual allegation and therefore it is denied.**

*53. Pursuant to UFTA, an "asset" means property of a debtor. 740 ILCS 160/2(b).*

**Admitted.**

*54. The Vehicle is an "asset" of Lanny's within the meaning of the UFTA.*

**Paragraph 54 is a legal conclusion, not a factual allegation and therefore it is denied.**

*55. Pursuant to UFTA, a "transfer" means every mode of disposing or parting with an asset. 740 ILCS 160/2(l).*

**Admitted.**

*56. Lanny's release of all interest in the Vehicle to Marc and Marc's Windows was a "transfer" within the meaning of the UFTA. 740 160/2(l).*

**Paragraph 56 is a legal conclusion, not a factual allegation and therefore it is denied.**

*57. A debtor who is generally not paying his debts as they become due is presumed to be insolvent. 740 ILCS 160/3(b).*

**Admitted.**

*58. At the time of the transfer and at all times relevant, Lanny was "insolvent" within the meaning of UFTA since he testified to his insolvency at both the First Citation Examination and the Second Citation Examination and stated that he was unable to pay his debts.*

**This part of Paragraph 58 is a legal conclusion, not a factual allegation and therefore it is denied.**

*He later declared bankruptcy, but Plaintiff's claim was adjudged nondischargeable.*

**Admitted.**

*59. Plaintiff's claim against Lanny arose before he transferred the Vehicle to the Defendant and Marc's Windows on or about November 29, 2014. Lanny was served with a copy of Plaintiff's Summons and Complaint on or about September 30, 2014, a full two months before the transfer of the Vehicle.*

**Defendant denies Plaintiff's claim against Lanny arose before Lanny transferred the Vehicle to the Marc's Windows because Alan's Draperies transferred the Vehicle to Marc's Windows on July 15, 2013. See <u>Defendant Exhibit 1</u>.**

*60. Lanny, as the transferor, did not receive a reasonably equivalent value from the transferee, Defendant and/or Marc's Windows, in exchange for the transfer of the Vehicle. Lanny's own testimony and the documents produced by Bill Stasek Chevrolet indicate that Lanny simply gave the vehicle to the Defendant and Marc's Window Treatments.*

**Defendant denies Lanny did not did not receive reasonably equivalent value from Marc's Windows because of the stated exchange of vehicles. However, Defendant lacks sufficient information for what the value of the 2007 Chevrolet Trailblazer SS was at the time of the transfer on July 15, 2013. According to NADA Guide's estimate, the average trade-in value of s 2007 Chevrolet Trailblazer SS today is $7,875.00. See <u>Defendant Exhibit 2</u>.**

*61. A transfer of an asset by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the debtor did not receive a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time of the transfer. 740 ILCS 160/6(a).*

**Admitted.**

*62. A creditor may bring an action for avoidance of a fraudulent transfer to the extent necessary to satisfy the creditor's claim under the Act. 740 ILCS 160/8(a)(1).*

**Defendant admits a creditor may bring an action for avoidance of a fraudulent transfer to the extent necessary to satisfy the creditor's claim under the Act in state court but denies a creditor can bring an action for avoidance of a fraudulent transfer to the extent necessary to satisfy the creditor's claim under the Act in Bankruptcy Court.**

63. *The creditor may recover a judgment for the value of the asset transferred against the party to whom the asset was fraudulently transferred. 740 ILCS 160/9(b)(1).*

**Admitted.**

64. *This transfer was a fraud against Plaintiff since Lanny did not receive reasonably equivalent value for the transfer of the Vehicle, but the Defendant and Marc's Windows benefited from the transfer through their use of the Vehicle as a trade-in towards the purchase of a new vehicle.*

**Paragraph 64 is a legal conclusion, not a factual allegation and therefore it is denied. Defendant also denies Lanny or Alan's Draperies did not receive reasonably equivalent value for the transfer of the Vehicle.**

65. *Further, the transfer represents a considerable waste. Lanny did not receive value for a substantial asset which could have been used to satisfy Plaintiff's claim. As Bill Stasek Chevrolet's subsequent transfer revealed, the market value of the asset was almost $11,000.00.*

**Paragraph 65 is a legal conclusion and not a factual allegation and therefore it is denied.**

66. *$9,999.99 represents a reasonable value of the Vehicle at the time of transfer.*

**Denied.**

67. *This Honorable Court should void the transfer, declare the full amount sought as nondischargeable, and enter judgment in Plaintiff's favor for $9,999.99 against the Defendant as the first transferee of the Vehicle.*

**Paragraph 67 of the complaint is a request for court action, and not a statement of fact. Defendant prays that this request be denied.**

## COUNT II
## Objection to Discharge Pursuant to Rule 7001(6)

*68. Plaintiff restates and re-alleges the allegations of Paragraphs 1-67 as though fully set forth*

*herein.*

**The responses to paragraphs 1 through 67 are repeated and incorporated in response to this paragraph.**

## COUNT III

## Objection to Discharge Pursuant to Rule 7001(1)

*69. Plaintiff restates and re-alleges the allegations of Paragraphs 1-67 as though fully set forth*

*herein.*

**The responses to paragraphs 1 through 67 are repeated and incorporated in response to this paragraph.**

Wherefore, MARC GIBRICK, Defendant, prays that the Court deny Robert Golden's

Complaint, and any other legal or equitable relief that the court deems just.

Respectfully Submitted,

/s/ Robert C. Bansfield Jr.
Robert C. Bansfield Jr., A.R.D.C. #6329415
Attorney for the Debtor

David M. Siegel & Associates, LLC
790 Chaddick Drive
Wheeling, IL 60090
(847) 520-8100